UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/11/08

SECURITIES AND EXCHANGE COMMISSION,

                              Plaintiff,

        -against-

STEVEN BYERS, JOSEPH SHERESHEVSKY,
WEXTRUST CAPITAL, LLC, WEXTRUST
EQUITY PARTNERS, LLC, WEXTRUST
DEVELOPMENT GROUP, LLC, WEXTRUST
SECURITIES, LLC, and AXELA HOSPITALITY,
LLC,

                              Defendants.

No. 08 Civ. 7104 (SWK)



FILED

AUG 2 6 2008    NH
AUG 26 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

08CV4887
JUDGE DOW
MAGISTRATE JUDGE BROWN

## ORDER APPOINTING TEMPORARY RECEIVER

On the Application of Plaintiff Securities and Exchange Commission for an Order appointing a temporary receiver for defendants Wextrust Capital, LLC; Wextrust Equity Partners, LLC; Wextrust Development Group, LLC; Wextrust Securities, LLC; and Axela Hospitality, Inc. (collectively, the "Defendant Wextrust Entities") pending adjudication of the Commission's request for a preliminary injunction, the Court has considered (1) the Complaint filed by the Commission on August 11, 2008; (2) the Declaration of Tamara R. Heller, executed on August 10, 2008, and the exhibits thereto, including the declarations of William Schorsch, Nanette L. Wauchop and Patricia K. Singleton; (3) the Declaration of Steven G. Rawlings pursuant to Local Rule 6.1, executed on August 11, 2008, and the exhibits thereto; (5) the memorandum of law in support of Plaintiff Commission's application, dated August 10, 2008.

Based on the foregoing documents, the Court finds that a proper showing, as required by Section 20(b) of the Securities Act, and Section 21(d) of the Exchange Act, has been made for the relief granted herein because it appears that appointment of a receiver for the Defendant

Wextrust Entities is necessary to preserve the *status quo*, to ascertain the extent of commingling of funds among the Defendant Wextrust Entities and all entities they control or in which they have an ownership interest, to ascertain the true financial condition of the Defendant Wextrust Entities and the disposition of investor funds, to prevent further dissipation of the property and assets of the Defendant Wextrust Entities and all entities they control or in which they have an ownership interest, to prevent the encumbrance or disposal of property or assets of the Defendant Wextrust Entities and the investors, to preserve the books, records, and documents of the Defendant Wextrust Entities, to be available to respond to investor inquiries, to protect investors' assets, and to determine whether the Defendant Wextrust Entities should undertake bankruptcy filings.

Good and sufficient reasons have been shown why procedure other than by notice of motion is necessary.

This Court has jurisdiction over the subject matter of this action and over the Defendants, and venue properly lies in this District.

**NOW, THEREFORE,**

**IT IS HEREBY ORDERED** that Timothy J. Coleman of Dewey & LeBoeuf, LLP, pending further order of this Court, be and hereby is appointed to act as receiver for the Defendant Wextrust Entities and all entities they control or in which they have an ownership interest, including, but not limited to, those entities listed on Exhibit A, to (1) preserve the *status quo*; (2) ascertain the true financial condition of the Defendant Wextrust Entities, of all entities they control or in which they have an ownership interest, and of the disposition of investor funds; (3) determine the extent of commingling of funds between the Defendant Wextrust Entities and all entities they control or in which they have an ownership interest; (4) prevent

2

further dissipation of the property and assets of the Defendant Wextrust Entities and all entities they control or in which they have an ownership interest; (5) prevent the encumbrance or disposal of property or assets of the Defendant Wextrust Entities, of all entities they control or in which they have an ownership interest, and of the investors; (6) preserve the books, records, and documents of the Defendant Wextrust Entities and all entities they control or in which they have an ownership interest; (7) be available to respond to investor inquiries; (8) determine if the Defendant Wextrust Entities and all entities they control or in which they have an ownership interest should undertake a bankruptcy filing. To effectuate the foregoing, the receiver is hereby empowered to:

(A) Take and retain immediate possession and control of all of the assets and property of the Defendant Wextrust Entities and all entities they control or in which they have an ownership interest, including, but not limited to, those entities listed on Exhibit A, and all books, records, and documents of Defendant Wextrust Entities and all entities they control or in which they have an ownership interest, and the rights and powers of it with respect thereto;

(B) Have exclusive control of, and be made the sole authorized signatory for, all accounts at any bank, brokerage firm, or financial institution that has possession or control of any assets or funds of Defendant Wextrust Entities and all entities they control or in which they have an ownership interest, including, but not limited to, those entities listed on Exhibit A;

(C) Succeed to all rights to manage all properties owned or controlled, directly or indirectly, by the Wextrust Defendants, including, but not limited to, those entities listed on Exhibit A, pursuant to the LLC and operating agreement relating to each entity;

(D) Pay from available funds necessary business expenses required to preserve the assets and property of Defendant Wextrust Entities and all entities they control or in which they have

3

an ownership interest, including the books, records, and documents of the Defendants, notwithstanding the asset freeze imposed by the Court's Order Freezing Assets, issued on August 11, 2008;

(E) Take preliminary steps to locate assets that may have been conveyed to third parties or otherwise concealed;

(F) Take preliminary steps to ascertain the disposition and use of funds obtained by the Defendants resulting from the sale of securities issued by the Defendants and the entities they control;

(G) Engage and employ persons, including accountants, attorneys, and experts, to assist in the carrying out of the receiver's duties and responsibilities hereunder;

(H) Take all necessary steps to gain control of the Defendants' interests in assets in foreign jurisdictions, including, but not limited to, those foreign assets listed in Exhibit A, and those funds maintained in accounts at foreign institutions listed in Exhibit B, which may be proceeds of Defendants' fraud, including, but not limited to, taking steps necessary to repatriate foreign assets;

(I) Take such further action as the Court shall deem equitable, just, and appropriate under the circumstances upon proper application of the receiver.

**IT IS FURTHER ORDERED** that no person or entity, including any creditor or claimant against any of the Defendants, or any person acting on behalf of such creditor or claimant, shall take any action to interfere with the taking control, possession, or management of the assets, including, but not limited to, the filing of any lawsuits, liens, or encumbrances, or bankruptcy cases to impact the property and assets subject to this order.

**IT IS FURTHER ORDERED** that the Defendants shall pay the reasonable costs, fees, and expenses of the receiver incurred in connection with the performance of his duties described herein, including, but not limited to, the reasonable costs, fees, and expenses of all persons who may be engaged or employed by the receiver to assist him in carrying out his duties and obligations. All applications for costs, fees, and expenses of the receiver and those employed by him shall be made by application to the Court setting forth in reasonable detail the nature of such costs, fees, and expenses, and shall conform to the Fee Guidelines that will be supplied by the U.S. Securities and Exchange Commission.

**IT IS FURTHER ORDERED** that a copy of this Order and the papers supporting the Commission's Application be served upon the Defendants on or before August 12, 2008, by personal delivery, facsimile, overnight courier, or first-class mail.

**IT IS FURTHER ORDERED** that this Order shall be, and is, binding upon the Defendants and each of their respective officers, agents, servants, employees, attorneys-in-fact, subsidiaries, affiliates and those persons in active concert or participation with them who receive actual notice of this Order by personal service, facsimile service, or otherwise.

SO ORDERED.

Dated: _____

August 11, 2008
New York, New York

RICHARD J. SULLIVAN (PART I)
UNITED STATES DISTRICT JUDGE

Exhibit A

| Name | Address | County | State of Incorporation | Managing Agent (For Service) | Address of Managing Agent (For Service) |
|---|---|---|---|---|---|
| **Offices** | | | | | |
| Wextrust Capital | 333 W. Wacker Drive, 18th Floor Chicago, IL 60606 | | | | |
| | 999 Waterside Drive, Suite 2220 Norfolk, VA 23510 | | | | |
| | 114 W. 47th Street, 20th Floor New York, NY 10036 | | | | |
| | 78 Graskop Avenue Waterkloof Heights Pretoria, South Africa | | | | |
| | 7 Jabotinski Street, 34th Floor Ramat Gan, Israel | | | | |
| Wextrust Securities | 999 Waterside Drive, Suite 2220 Norfolk, VA 23510 | | | | |
| | 7 Jabotinski Street, 34th Floor Ramat Gan, Israel 333 W. Wacker Drive, 18th Floor Chicago, IL 60606 | | | | |
| | 2424 N. Federal Highway Boca Raton, FL 33431 | | | | |
| | 114 W. 47th Street, 20th Floor New York, NY 10036 | | | | |
| | 16900 W. 10 Mile Road Southfield, MI 48075 5200 Poplar Avenue Memphis, TN 38137 | | | | |
| Wextrust Equity Partners | 118 30th Avenue North Nashville, TN 37203 | | | | |
| Wextrust Development Group | 1200 Abernathy Road, Suite 1700 Atlanta, GA 30328 13 E. First Street Hinsdale, IL 60521 | | | | |
| Assia Hospitality | 6701 Democracy Boulevard, Suite 300 Bethesda, MD 20817 | | | | |
| **Properties** | | | | | |
| 45 South Washington, LLC | 45 S. Washington St., Hinsdale, IL 60521 | Cook County | | 45 S. Washington Managers, LLC; WEP is "Manager" of the Manager; WEP is owned by WexTrust Capital. | 333 W. Wacker Dr., Suite 1800 Chicago, IL 60606 |
| 1290 S. Michigan Avenue, LLC | 1290 S. Michigan Ave, Chicago, IL 60605 | Cook County | Illinois | Wexford Equity Partners | 333 W. Wacker Dr., Suite 1800 Chicago, IL 60606 |
| 1290 S. Michigan LLC B | 1290 S. Michigan Ave., Chicago, IL 60605 | Cook County | Illinois | Wexford Equity Partners | 333 W. Wacker Dr., Suite 1800 Chicago, IL 60606 |
| 1805 Highpoint | 1805 High Point Dr., Naperville, IL 60563 | DuPage County | Illinois | | |
| 318 W. Adams/Escrow | 318 W. Adams St., Chicago, IL 60606 | Cook County | Illinois | | |

Exhibit A

| Name | Address | County | State of Incorporation | Managing Agent | Address of Managing Agent (For Service) |
|---|---|---|---|---|---|
| 625 Paragon LLC | 625 West Division St., Chicago, IL 60610 | Cook County | Delaware | 625 Paragon Managers, LLC; WEP is "Manager" of the Manager; WEP is owned by WestTrust Capital | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 |
| 47 Dean Street Investors | 47 Dean St., Brooklyn, NY 11201 | Kings County | Delaware | 47 Dean Street Managers, LLC; WEP is the "Manager" of the Manager; WEP is owned by WestTrust Capital | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 |
| Ainsridge Property Holdings | 1900 Riverview Tower, Knoxville, TN 37922 | Knox County | Tennessee | Michael Gorney | 900 N. Peters Rd., Knoxville, TN 37922 |
| ATMI LLC | Memphis, TN | — | Delaware | Brandon Investments, LLC which is wholly owned by Westvaal Capital, LLC | 333 W. Wacker Dr. Suite 1600 Chicago, IL 60606 |
| BenTech Holdings LLC; Belle Meade Centre Investors, LLC | 24 White Bridge Rd., Nashville, TN 37205 | Davidson County | Delaware; Illinois | Wexford Equity Partners | 333 W. Wacker Dr. Suite 1600 Chicago, IL 60606 |
| Block III Mines & Minerals, LLC | | | Virginia | Block III Managers, which is 100% owned by Brandon Investments, Shawshankersky and Byers are the managers of Brandon | 333 W. Wacker Dr. Suite 1600 Chicago, IL 60606 |
| Bret Investors Skeleton Coast III; Bret Investors Skeleton Coast | | | Virginia; Virginia | | |
| Carlisle Park LLC | 5695 Forum Park Drive, Houston, TX 77036 | Harris County | Texas | | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 |
| Clarksville Industrial Investors, LLC | 786 International Blvd., Clarksville, TN 37040 | Montgomery County | Delaware | Clarksville Industrial Managers, LLC which is in turn owned and controlled by WEP | 333 W. Wacker Dr. Suite 1600 Chicago, IL 60606 |
| CMVII | 2500 Tecumseh Way, Cornan, MS 38654 | Alcorn County | | | |
| Crowne Phoenix Investors LLC | (Crowne Plaza hotel) 2532 West Peoria Ave Phoenix, AZ 85029 | Maricopa County | Delaware | Crowne Phoenix Managers, LLC; WEP is the "Manager" of the Manager; WEP is owned by WestTrust Capital | 333 W. Wacker Dr. Suite 1600 Chicago, IL 60606 |
| Deen Street Investors LLC | 44-54 Deen Street Brooklyn, NY 11201 | Kings County | Illinois | Deen Street Managers, LLC; WEP is the "Manager" of the Manager; WEP is owned by WestTrust Capital | 333 W. Wacker Dr. Suite 1600 Chicago, IL 60606 |
| Drake Street Managers LLC; Drake Oak Brook Investors LLC | (Wyndham Hotel) 2301 York Rd, Oak Brook, IL 60523 | DuPage County | Delaware | Drake Oak Brook Managers, LLC; "Manager" of the Manager is Axela Hospitality; LLC an affiliate of Westtrust Capital, LLC; WEP | 333 W. Wacker Dr. Suite 1600 Chicago, IL 60606 |
| East Point | | | | WEP | 333 W. Wacker Dr. Suite 1600 Chicago, IL 60606 |
| Esraclave Plaza, LLC; First Highland; First Wyoming Investors LLC | 900 28th St. SW, Wyoming, MI 49509 | Kent County | Illinois | Steve Byers; First Highland Managers, LLC; First Wyoming Managers, LLC; WEP is Managing Member | 333 W. Wacker Dr. Suite 1600 Chicago, IL 60606 |
| Freeliebe Holdings; Freeport (star Pointes, LLC) | 1615 Poydras St., New Orleans, LA 70112 | | Louisiana | | |
| GDR 1 year @ 7.00 / GDR 18 months @ 7.75 / GDR 3 years @ 12.00 / GDR 3 years @ 9.00 / GDR 5% Rollover | | | | | |
| Glade Springs; Gold Coast Investors LLC | 1616 N. Clark St. Chicago, IL 60614 (Days Inn Hotel) | Cook County | Illinois | Gold Coast Managers, LLC; WEP is the "Manager" of the manager; WEP is owned by Westrust Capital | 333 W. Wacker Dr. Suite 1600 Chicago, IL 60606 |
| Grant Street Investors LLC | 5726 South Washington Street, Hinsdale, IL 60521 | Cook County | Illinois | GSH Managers, LLC; the "Manager" of the manager at WEP; WEP is owned by WestTrust Capital | 333 W. Wacker Dr. Suite 1600 Chicago, IL 60606 |

Exhibit A

| Name | Address | County | State of Incorporation | Managing Agent (For Service) | Address of Managing Agent (For Service) |
|---|---|---|---|---|---|
| GSA Investors, LLC | 233 East Waterfall Drive, Elkhart, IN<br>310 East Knapp Street, Milwaukee, WI<br>8959 South Sacramento, Chicago, IL<br>6001 Odana Road, Madison, WI<br>4121 Southpoint Blvd., Jacksonville, FL<br>117 South Scatterfield Road, Anderson, IN<br>10 South 2nd Street, Lafayette, IN | Elkhart County<br>Milwaukee County<br>Cook County<br>Dane County<br>St. John's County<br>Madison County<br>Tippecanoe County | Illinois | GSA Managers, LLC, the "Manager" of the manager is WEP; WEP is owned by WinTrust Capital | 333 W. Wacker Dr., Suite 1600<br>Chicago, IL 60606 |
| GSPH Development, LLC | | | | GSPH Managers, LLC | |
| GSPH Managers, LLC | | | | Westland Development, LLC | |
| GSPH 1 year @ 7.30 | | | | | |
| GSPH 18 months @ 7.75 | | | | | |
| GSPH 3 years @ 12.00 | | | | | |
| GSPH 3 years @ 9.00 | | | | | |
| Guaranteed Depository Receipts | | | | | |
| Hammond Industrial Investors LLC | 301-811 Price Drive, Hammond, LA 70401 | Tangipahoa Parish | Delaware | Hammond Industrial Managers, LLC, the "Manager" of the manager is WEP; WEP is owned by WinTrust Capital | 333 W. Wacker Dr., Suite 1600<br>Chicago, IL 60606 |
| Hammond II | | | | | |
| Hamptons of Hinsdale Mortgage Fund LL- | 5725 South Washington Street, Hinsdale, IL 60521 | Cook County | Delaware | WinTrust Hamptons Funding Manager, LLC, the "Manager" of the manager is WinTrust Capital | 333 W. Wacker Dr., Suite 1600<br>Chicago, IL 60606 |
| Hinsdale Fund, LLC | Hinsdale, IL | | Illinois | | |
| High Yield Debt Fund II | | | | | |
| Highland Park | 1710 First Street Building, Highland Park, IL 60613 | Lake County | Illinois | First Highland Managers, LLC; owned 100% by WEP | 333 W. Wacker Dr., Suite 1600<br>Chicago, IL 60606 |
| Hilltop Apartments LLC | 6528 Columbus Ave., Anderson, IN 46013 | Madison County | | Hilltop Investors, LLC; WEP is the "Manager" of the manager; WEP is owned by WinTrust Capital | 333 W. Wacker Dr., Suite 1600<br>Chicago, IL 60606 |
| Hilltop Ridge Apartments LLC | | | | Hilltop Ridge Investors, LLC; WEP is the "Manager" of the manager; WEP is owned by WinTrust Capital | 333 W. Wacker Dr., Suite 1600<br>Chicago, IL 60606 |
| Homer Glen Investors LLC | West 159th Street and South Parker Rd., Homer Glen, IL 60491 | Will County | Illinois | Homer Managers, LLC; the "Manager" of the manager is WEP; WEP is owned by WinTrust Capital | 333 W. Wacker Dr., Suite 1600<br>Chicago, IL 60606 |
| Hyde Park Investors, LLC | 1556 Hyde Park Rd., Essex, MD 21221 | Baltimore County | Illinois | WinTrust Equity Partners | 333 W. Wacker Dr., Suite 1600<br>Chicago, IL 60606 |
| IDEX Mines and Minerals LLC | | | Virginia | IDEX Mining Managers, LLC; owned equally by the Shareholders/Family Limited Partnership and Steven Byers | 333 W. Wacker Dr., Suite 1600<br>Chicago, IL 60606 |
| Interstate Park Investors LLC | 185 and Perry Hill Road, Montgomery, AL 36109 | Montgomery County | Delaware | Interstate Park Managers, LLC; the "Manager" of the manager is WEP; WEP is owned by WinTrust Capital | 333 W. Wacker Dr., Suite 1600<br>Chicago, IL 60606 |
| Jessey Properties | | | | | |
| Jeff Matt Holdings, LLC | Birmingham, AL | | | | |
| Mansfield LLC | | | | WTC | |
| 2400 McCue Investors, LLC | 2400 McCue Rd, Houston, TX 77056 | Harris County | Illinois | Westcore Capital/Westford Equity Partners | 333 W. Wacker Dr., Suite 1600<br>Chicago, IL 60606 |
| McBurn Estates | | | | | |
| McBec Row Investors LLC | 12th Avenue South and Division Street, Nashville, TN 37203<br>Nashville, TN | Davidson County | Illinois | Westroad Asset Management | 333 W. Wacker Dr., Suite 1600<br>Chicago, IL 60606 |
| Myatt Holdings | | | Illinois | | |
| New Salem Investors LLC | 940 New Salem Road, Murfreesboro, TN 37129 | Rutherford County | Tennessee | New Salem Managers, LLC; the "Manager" of the manager is WEP; which is owned by WinTrust Capital | 333 W. Wacker Dr., Suite 1600<br>Chicago, IL 60606 |

Exhibit A

| Name | Address | County | State of Incorporation | Managing Agent (For Service) | Address of Managing Agent (For Service) |
|------|---------|--------|------------------------|------------------------------|------------------------------------------|
| N. Point East, LLC | New Orleans, LA | | | East Point Investors, LLC; WEP is the "Manager" of the manager; WEP is owned by WestTrust Capital | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 |
| Park Village Holdings LLC | 431 Park Village Drive and 215 Center Park, Knox County Drive, Knoxville, TN 37922 | Knox County | Tennessee | Park Village Managers, LLC; the "Manager" of the manager is WEP; WEP is owned by WestTrust Capital | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 |
| Peoria Office Investors LLC | 124 SW Adams, Peoria, IL 61602 | Peoria County | Delaware | Peoria Office Managers, LLC; WEP is the "Manager" of the Manager Park Village Managers, LLC | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 |
| PVR Ventures, LLC | | | | | |
| Rand Energy | | | | | |
| Rand Quarry | | | | | |
| Rivn's Edge Investors LLC | 2623 Oakley, Intersection of West Michigan Street and North Oakley Avenue, Chicago, IL | Cook County | Illinois | Rivn's Edge Managers, LLC; WEP is the "Manager" of the Manager | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 |
| Riverside Investors, LLC | One Riverside Road, Riverside, IL 60346 | Cook County | Illinois | Wexford Equity Partners, LLC | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 |
| S. Pine Street Investors LLC | 196-248 South Pine Street, Burlington, WI 53105 | Racine County | Delaware | S. Pine Street Managers, LLC; the "Manager" of the manager is WEP; WEP is owned by WestTrust Capital | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 |
| Servites | | | | SF Managers, I, LLC | |
| SF Development Company, LLC | | | | | |
| Shadowbrook, LLC | Pascagoula, MS | | Delaware | Shadowbrook Managers, LLC; WEP is the "Manager" of the Manager | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 |
| Shadowbrook Investors LLC | 2115 Chapman Road, Chattanooga, TN | Hamilton County | | | |
| Skeleton Creek Bret Investors LLC | | | | | |
| Space Park, LLC | Goodlettsville, TN | Not Clear | Tennessee | Tennessee Office Managers, LLC; WEP is the "Manager" of the Manager | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 |
| Tennessee Office Investors | Multiple Cities in TN | | Delaware | | |
| Uptown Square LLC | | | | | |
| USPN 9 5% Rollover | | | | | |
| Volcano | | | | | |
| West 82nd Street Holdings, LLC | 175-182 West 82nd Street, New York, NY | New York City County | Delaware | West 82nd Street Holdings, LLC ("Holdings"); West 82nd Street Managers ("Manager") is the manager of Holdings; WEP is the manager of the Manager | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 |
| West 82 Street Investors LLC | 178-182 West 82nd Street, New York, NY | New York City County | Delaware | West 82nd Street Managers, LLC; WEP is the "Manager" of the Manager | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 |
| West Brendon Investors LLC | 6700 Baum Drive, Knoxville, TN and 312-326 Nancy Lynn Lane, Knoxville, TN | Knox County | Illinois | West Brandon Managers, LLC; WEP is the "Manager" of the Manager | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 |
| 2433 West Belmont Investors, LLC | 2433 West Belmont Avenue, Chicago, IL 60618 | Cook County | Illinois | 2433 W. Belmont Managers, LLC; WEP is the "Manager" of the manager; WEP is owned by WestTrust Capital | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 |
| WP New Orleans | | | | WEP | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 |
| Westside Diversified Futures Fund I, LLC | | | Delaware | Wexford Commodity Managers, LLC; the manager of the manager is WTC. | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 |
| Westside Diversified Offshore Futures F. | | | British Virgin Islands | Wexford Commodity Managers, LLC | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 |
| Westside Principal Protected Fund I LLC | | | Delaware | Wexford Commodity Managers, LLC; the manager of the manager is WTC. | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 |

Exhibit A

| Name | Address | County | State of Incorporation | Managing Agent (For Service) | Address of Managing Agent (For Service) |
|---|---|---|---|---|---|
| Westside Principal Protected Offshore Fi | — | | British Virgin Islands | Wexford Commodity Managers, LLC | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 |
| Wextrust High Yield Debt Fund I | — | | Delaware | West, LLC which is wholly owned by WfnTrust Capital, LLC | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 |
| Wextrust High Yield Debt Fund II, LLC | — | | Cayman Islands | WfnTrust Capital, LLC | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 |
| Wextrust High Yield Debt Offshore Fund I | — | | | | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 |
| Wextrust Qualified Investors LLC - Dean Street | | | | Wextrust Capital, LLC | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 |
| Wkma Rudolph Holdings, LLC | Clarksville, TN | | Tennessee | Wkphmax Road Investors, LLC is managed by Workmans Road Managers, | |
| Workman Road Investors LLC | 3551 Workman Road, Knoxville, TN | Knox County | Delaware | LLC, the Manager. WEP is the "Manager" of the Manager. | 333 W. Wacker Dr., Suite 1800 Chicago, IL 60606 |
| York Road Investors LLC | 116-118 North York Road Elmhurst, IL 60126 | DuPage County | Delaware | York Road Managers, LLC, the "Manager" of the manager is Steve Byers through WEP | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 |

**Other Property**

| Name | Address | County | State of Incorporation | Managing Agent | Address |
|---|---|---|---|---|---|
| Wextrust Capital - Aircraft | Falcon 20 | | | | |
| Steve Byers - Residence | 2 York Lake Ct Oak Brook IL | | | | |
| Steve Byers - Condos | Marco Naples Boca Chicago, IL | | | | |
| Joseph Shereshevsky - Residence | 801 E. Monotomy Ct. Norfolk, VA 23507 | | | | |
| Joseph Shereshevsky - Other Jewelry Properties Services | | | | | |

**Banks**

| Name | Address | County | State of Incorporation | Managing Agent | Address |
|---|---|---|---|---|---|
| GDR 1 year @ 7.00 | | | | | |
| GDR 1 year @ 7.00 | | — | | | |
| GDR 18 months @ 7.75 | | — | | | |
| GDR 3 years @ 12.00 | | — | | | |
| GDR 3 years @ 9.00 | | — | | | |
| GDR 8.5% Rollover | | — | | | |
| GSPN 1 year @ 7.00 | | — | | | |
| GSPN 18 months @ 7.75 | | — | | | |
| GSPN 3 years @ 12.00 | | — | | | |
| GSPN 3 years @ 9.00 | | — | | | |
| Guaranteed Depositary Receipts High Yield Debt Fund II | | — | | | |
| GSPN 8.5% Rollover | | — | | | |
| Wextable Diversified Futures Fund II, LLC | | — | | Delaware | Wexford Commodity Managers, LLC, the manager of the manager is WFC. | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 |
| Wextable Diversified Offshore Futures | | — | | British Virgin | Wexford Commodity Managers, LLC | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 |
| Wextrust Principal Protected Fund I, | | — | | Delaware | Wexford Commodity Managers, LLC, the manager of the manager is WFC. | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 |
| Wextrust Principal Protected Offshore Fund I, LLC | | — | | British Virgin Islands | Wexford Commodity Managers, LLC | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 |
| Wextrust High Yield Debt Fund I | | — | | Delaware | West, LLC which is wholly owned by WfnTrust Capital, LLC | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 |
| Wextrust High Yield Debt Fund II, LLC | | — | | Cayman Islands | WfnTrust Capital, LLC | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 |
| Wextrust High Yield Debt Offshore Fund I/II | | — | | | | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 |
| Wextrust Qualified Investors LLC - Dean Street | | | | WfnTrust Capital, LLC | 333 W. Wacker Dr., Suite 1600 Chicago, IL 60606 |

Exhibit A

| Name | Address | County | State of Incorporation | Managing Agent (For Service) | Address of Managing Agent (For Service) |
|---|---|---|---|---|---|
| **Africa** | | | | | |
| Pure Africa Mining & Minerals | 76 Glenloop Avenue<br>Waterkloof Heights<br>Pretoria, South Africa | | | | |
| PAM Export (Pty) Ltd. | 3A Jewellery Center, 225 Main Street<br>Suite 529<br>Johannesburg 2001, South Africa | | | | |
| ATM II LLC | --- | --- | Delaware | Brandon Investments, LLC which is wholly owned by Westvind Capital, LLC | 333 W. Wacker Dr., Suite 1900<br>Chicago, IL 60606 |
| Block III Mines & Minerals, LLC | | | Virginia | Block III Managers, which is 100% owned by Brandon Investments. Shareholders are equally the managers of Brandon | 333 W. Wacker Dr., Suite 1900<br>Chicago, IL 60606 |
| Best Investors Skeleton Coast III | | | Virginia | | |
| Best Investors Skeleton Coast | | | Virginia | | |
| IDEX Mines and Minerals LLC | | | Virginia | IDEX Mining Managers, LLC owned equally by the Shetodinovsky Family Limited Partnership and Steven Byers | 333 W. Wacker Dr., Suite 1900<br>Chicago, IL 60606 |
| Rand Energy | | | | | |
| Rand Quarry | | | | | |
| Skeleton Coast Best Investors LLC | | | | | |
| Vanzano | | | | | |
| **Native Assets** | | | | | |
| Beldoor 3550 (Pty) Ltd. | Northwest Province, South Africa Awendster 142 ta bit Bloemhof and Schweizer Reneke | | | | |
| Lichtenburg Cowgars | South Africa | | | | |
| Skeleton Coast MNE | Namibia | | | | |
| Tropical Paradise Trading 508 (Pty) | Namibia | | | | |
| Golden Ribbon Trading 397 (Pty) Ltd. | South Africa | | | | |
| **Earth Money** | | | | | |
| REDKEX #20 (Pty) Ltd. | | | | | |
| African Spirit 155 (Pty) Ltd. | | | | | |
| Vanzano Traders (Pty) Ltd. | | | | | |
| Rapscorp (Pty) Ltd. | Namibia | | | | |
| Dove Investment (Pty) Ltd. | Namibia | | | | |
| Pure Africa Minerals (Pty) Ltd. | | | | | |
| Pure Africa Holdings (Pty) Ltd. | | | | | |
| Pure Africa Investment (Pty) Ltd. | | | | | |
| African Spirit Trading 250 (Pty) Ltd. | | | | | |
| PAM Export (Pty) | 3A Jewellery Center<br>225 Main Street<br>Suite 529<br>Johannesburg 2001, South Africa | | | | |
| Brandon Investment LLC | | | | | |
| Thunder Energy LLC | | | | | |
| Best Investments (Pty) Ltd | 166 Sam Nujoma Drove<br>Walvis Bay | | | | |
| Mark Investments (Pty) Ltd | 278 Charles Street, Brooklyn, Pretoria,<br>Province of Gauteng, South Africa<br>P.O. Box 6788, Pretoria, 0001<br>Province of Gauteng, South Africa | | | | |

| Bank | Address | Routing | Account Numbers | Account Names |
|---|---|---|---|---|
| ABSA | Absa Tower East 170 Main Street, 3rd Floor Johannesburg South Africa | | 4064343644 | Pure Africa Minerals |
| Avenue Bank | 111 10th Avenue South, Suite 400, Nashville, TN 37203 | 61003415 | 1006400924 3000000111 | Wextrust Equity Partners, LLC |
| Bank Hapoalim (Israel) | | | 59884649 59977093 | Wextrust Securities Summit Capital |
| Bank One Oklahoma, NA | Oklahoma City, OK | 103000548 | 8308775 | Uptowne Square, LLC |
| Broadway Bank | 5960 N  Broadway, Chicago, IL 60660 | 071002419 | 11211901 Loan #315175 | W. 82nd Street Holdings, LLC W. 82nd Street Holdings, LLC Crowne Plaza |
| Central Carolina Bank & Trust | Winston-Salem, NC | 53100465 | 571096310 | Hilltop Ridge Apartments |
| Charter One | 71 South Wacker Drive, Suite 2900, Chicago, IL  60606 | 241070417 | 4510264240 4510264194 8016 6490 6113 6202 | Peoria Office Investors, LLC 825 Paragon Investors, LLC (Escrow) 47 Dean Street Investors LLC (Escrow) Crowne Plaza Investors LLC (Escrow) Crowne Plaza Investors LLC (Operating) Drake Oak Brook Holdings |
| Citibank F.S.B. | Chicago, IL  60606 | 271070801 | 0800588073 0800499429 0800575540 0800802130 0800602149 0800575532 0800575583 0800575575 0800580331 0800670144 080044191 0800584957 0800575558 0800575567 0800499429 0800584973 0800575516 0800575524 0800610184 0800575508 0800576172 0800499429 0800499445 0800584049 0800588073 0800588103 | High Yield Debt Fund III Baxtech Belle Meade Dean Street Investors, LLC Dean Street Managers LLC First Wyoming Investors Gold Coast Investors LLC Grant Street Investors, LLC GSA Investors, LLC Hamptons of Hinsdale Mortgage Highland Park Homer Glen Investors, LLC Hyde Park McCue Music Row New Salem Investors, LLC Park Village Holdings, LLC Rover's Edge Investors, LLC Tennessee Office Investors, LLC West Bearden Investors, LLC West Belmont Investors, LLC Wextrust Capital LLC Wextrust Capital LLC (payroll) Workman Road Investors, LLC High Yield Debt Fund III Wexford/for HPC Mortgage Fund |
| Citibank, NA | Chicago, IL | 271070801 | 080049287 | Riverside |
| Fifth Third Chicago | Chicago, IL | 042000314 | 7231186886 7231186538 | High Yield I Wexford High Yield |
| First National (Menlyn Park Branch) | South Africa Branch Code: 252645 | | 62142869413 62142869116 | Pure Africa Minerals - Toscanini Pure Africa Minerals (Pty) Ltd Bret Investors Skeleton Semjee Block III |
| Heritage Bank | Chicago, IL | | 1097 | |
| Hinsdale Bank & Trust | 25 East First Street, Hinsdale, IL  60521 | 71925402 | 250025590 250031701 | Wexford Development 82nd Street - Wexford Dev Grp |
| LaSalle Bank, NA | Chicago, IL | 071000505 | 5201556957 2090067 (725103) | York Road Investors, LLC Wexford High Yield Debt Offshore |
| Mizrahi Tefarot Bank | Tel Aviv, Israel | | | |
| National City Bank of Indiana | Anderson, IN | 074000065 | 501811582 | Hilltop Apartments, LLC |
| Northern Trust Company | 50 South LaSalle Street, Chicago, IL | 071000152 | 3800368595 2280581 2358911 2541459 | Wextrust Capital Wextrust Equity Partners Steven Byers Steven T. Byers |
| Park National Bank | 11 B  Madison St  Oak Park, IL 60302 | 071920559 | 3003833153 | The Drake Oak Brook, LLC |
| Southwest Bank | Houston, TX | 113011258 | 3321125 | Carlisle Park, LLC |
| Terra Nova Financial | 100 S  Wacker Dr , Suite 1550, Chicago, IL | | 3252-9989 | Joseph Shereshevsky |

| Bank | Address | Routing | Account Numbers | Account Names |
|---|---|---|---|---|
| Wachovia Bank | 125 Independence Blvd. 3rd Floor Virginia Beach, VA 23462 | 51400540 | 2000034754854 | 625 Paragon Investor's LLC |
| | | | 2000025123193 | ATM II, LLC |
| | | | 2000020461070 | Wextrust Securities (Operating) |
| | | | 2000020639123 | Wextrust Securities (Money Market) |
| | | | 2000020888459 | Wextrust Capital LLC |
| | | | 2000020406190 | Wextrust Capital LLC Distributions |
| | | | 2000028373788 | Crowne Plaza Escrow |
| | | | 2000025123025 | Drake Oak Brook Investors, LLC |
| | | | 2000028272470 | Wexford High Yield III - MMF |
| | | | 2000028272412 | High Yield Debt Fund III - Escrow |
| | | | 2000028272409 | High Yield Debt Fund III - MMF |
| | | | 2000028271983 | W. 62nd St Escrow |
| | | | 2000017257146 | Wexford High Yield Fund |
| | | | 2000028373643 | 47 Dean Street |
| | | | 6331 | Not Provided |
| | | | 8190 | Wextrust Capital LLC Disbursements |
| | | | 7158 | Wextrust Capital LLC Sweep |
| | | | 4887 | 625 Paragon Investors, LLC MMI |
| | | | 3849 | S. Pine Street Investors, LLC Escrow |
| | | | 3759 | Hammond Industrial Investors LLC Escrow |
| | | | 3830 | Clarksville Investors LLC Escrow |
| | | | 3720 | Cleveland Industrial Investors LLC Escrow |
| | | | 0910 | Crowne Plaza Investors LLC Sweep |
| | | | 1003 | Drake Oak Brook Holdings Sweep |
| | | | 3036 | Peoria Office Investors, LLC Escrow |
| | | | 1113 | Peoria Office Investors, LLC Sweep |
| | | | 2522 | Westford High Yield Fund IV LLC Escrow |
| | | | 2470 | GDR Tier Escrow |
| | | | 2483 | GDR Tier Sweep |
| | | | 1070 | Wextrust Securities LLC Escrow |
| | | | 9123 | Wextrust Securities LLC Sweep |
| | | | 2069 | West Belmont LLC Escrow |
| | | | 2085 | GSA Investors LLC Escrow |
| | | | 2386 | Tennessee Office LLC Escrow |
| | | | 2658 | Interstate Park Escrow |
| | | | 7145 | Wexford High Yield Fund II LLC MMI |
| | | | 2845 | Shallowford Investors LLC |
| | | | 4449 | Hamptons of Hinsdale Mortgage Fund, LLC (B Checking) |
| | | | 3193 | ATM II, LLC Escrow |
| | | | 1139 | ATM II, LLC Sweep |
| | | | 4177 | Block III Mines & Minerals Escrow |
| | | | 4180 | Block III Mines & Minerals Sweep |
| | | | 4410 | Block III Investors, LLC (Business Checking) |
| | | | 4423 | Block III Investors, LLC (Money Market) |
| | | | 4397 | Block III Managers, LLC (Business Checking) |
| | | | 4407 | Block III Managers, LLC (Money Market) |
| | | | 9194 | Brandon Investors LLC |
| | | | 0936 | Bret, LLC |
| | | | 3791 | Bret Investors Skeleton Coast LLC Escrow |
| | | | 0923 | Bret Investors Skeleton Coast LLC Sweep |
| | | | 2990 | Bret Investors Skeleton Coast III Escrow |
| | | | 0994 | Bret Investors Skeleton Coast III Sweep |
| | | | 2140 | IDEX Mine & Minerals, LLC Escrow |
| | | | 2218 | IDEX Mine & Minerals, LLC Sweep |
| | | | 6297 | Lindsey Energy, LLC |
| | | | 6307 | Lion's Walk LLC |
| | | | 6174 | Lion's Walk Lodge LLC |
| | | | 2137 | Pure Africa International LLC |
| | | | 6310 | Pure Africa Investments, LLC |
| | | | 2000028272593 | Pure Africa Minerals, LLC |
| | | | 3898 | PAM, LLC - Randfontaine |
| | | | 3908 | PAM, LLC - Calpers |
| | | | 3924 | PAM, LLC - Block III |
| | | | 4683 | PAM, LLC - Lichtenburg |
| | | | 3652 | Skeleton Coast Bret Investors LLC Escrow |
| | | | 0781 | Skeleton Coast Bret Investors LLC Sweep |
| | | | 2580 | Semjee Consulting LLC |
| | | | 6336 | Vaticano Traders LLC |

JUDGE KRAM

'08 CIV 7104 FILE COPY

ANDREW M. CALAMARI (AC-4864)
ASSOCIATE REGIONAL DIRECTOR
Alexander M. Vasilescu (AV-2575)
Doria Bachenheimer (DB-3307)
Steven G. Rawlings (SR-0623)
Danielle Sallah (DS-8686)
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
3 World Financial Center
New York, NY 10281
(212) 336-1100



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION    :
                                       :
                    Plaintiff,         :
                                       :     08 Civ. 7104 (SK)   ECF CASE
          - against -                  :
                                       :
STEVEN BYERS, JOSEPH                   :
SHERESHEVSKY, WEXTRUST CAPITAL, LLC,   :
WEXTRUST EQUITY PARTNERS, LLC,         :
WEXTRUST DEVELOPMENT GROUP, LLC,       :
WEXTRUST SECURITIES, LLC, and          :
AXELA HOSPITALITY, LLC,                :
                                       :
                    Defendants.        :
                                       :
-------------------------------------------------------x

## COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against

defendants Joseph Shereshevsky ("Shereshevsky"), Steven Byers ("Byers"), Wextrust Capital,

LLC ("Wextrust"), Wextrust Equity Partners, LLC ("WEP"), WexTrust Development Group,

LLC ("WDG"), Axela Hospitality LLC ("Axela") and Wextrust Securities, LLC ("Wextrust

Securities") (collectively "the Defendants"), alleges:

## SUMMARY

1.     The Commission brings this emergency action to halt ongoing fraudulent offerings of securities by a convicted felon, Defendant Shereshevsky, and his partner Defendant Byers (collectively, the "Individual Defendants"). The Individual Defendants, acting through Wextrust and its affiliated entities, Defendants Wextrust Securities, WEP, WDG and Axela (collectively, the "Wextrust Entities or Wextrust Entity Defendants"), have raised at least $255 million from at least 1,196 investors throughout the United States and abroad.

2.     Altogether the Defendants have conducted at least 60 private placement offerings and created approximately 150 entities in the form of limited liability companies or similar vehicles to act as issuers or facilitators of the offerings (collectively the "LLC Entities"). The vast majority of these offerings occurred between 2005 and 2008. However, at least four offerings occurred as early as 2002. Through these private placement offerings, the Defendants have sold securities to investors in the form of investment contracts, notes or other evidence of indebtedness.

3.     Defendants have been fraudulently raising money in the various offerings, each of which purportedly is for a particular investment, without disclosing that funds raised were actually being used to pay prior investors in unrelated offerings and to make unauthorized payments to fund the operations of the Wextrust Entities, which were operating at a deficit. An internal Wextrust combined "balance sheet" shows that as of December 31, 2007, Wextrust Entities "borrowed" at least $74 million from the LLC Entities and also "lent" at least $54 million to various LLC Entities. The Defendants are raising money and commingling funds in contravention of specific representations in private placement memoranda that investor funds

2

will be used for specific investments in real estate or other assets identified in offering memoranda.

4.    For example, the Defendants falsely represented to investors that more than $9 million raised in a 2005 offering would be used to purchase seven specifically identified real estate properties that were leased by federal government agencies, such as the General Services Administration (the "GSA offering"). In fact, the Defendants never purchased the seven properties identified in the GSA offering documents. Moreover, at the time the offering occurred, Defendants knew or were reckless in not knowing that the seven properties would not be acquired. Significantly, while the offering was ongoing, the Wextrust Entities "borrowed" more than $6 million from the funds raised in the GSA offering and used these funds for purposes unrelated to the GSA offering.

5.    In the private placement memoranda distributed to investors, and Wextrust's website, the Defendants have also failed to disclose to investors that Defendant Shereshevsky is a convicted felon who pleaded guilty to bank fraud. Defendants Wextrust Securities, Byers and Shereshevsky are also violating the Commission's broker-dealer registration requirements because the Form BD filings fail to identify Defendant Shereshevsky as a controlling person of Wextrust Securities, and fail to disclose Shereshevsky's felony conviction. Also, Defendant Shereshevsky, while acting as a broker, has failed to register with the Commission or be properly licensed as associated with Wextrust Securities. In addition, while Defendants Byers and Shereshevsky are openly managing Wextrust Securities and soliciting investors for the securities offerings, they have failed to pass proper licensing examinations, such as the Series 7 and 24.

6.    Expedited relief is needed because the Defendants are in the midst of raising

3

funds from new private placement offerings and plan to divert funds raised from new investors to

repay moneys owed to investors in prior offerings and to meet other expenses of the Wextrust

Entities. To halt the ongoing fraud, maintain the status quo and preserve any assets for injured

investors, the Commission seeks emergency relief, including temporary restraining orders and

preliminary injunctions, and an order: (i) imposing asset freezes against the Defendants; (ii)

appointing a receiver over the Wextrust Entity Defendants; (iii) allowing expedited discovery

and preventing the destruction of documents; and (iv) requiring the Defendants to provide

verified accountings. The Commission also seeks permanent injunctions, disgorgement of ill-

gotten gains, plus prejudgment interest and civil monetary penalties against all of the

Defendants.

## VIOLATIONS

7.    By virtue of the conduct alleged herein:

   a.    All Defendants directly or indirectly, singly or in concert, have engaged,
         and are engaging, in acts, practices, schemes and courses of business that
         constitute violations of Section 17(a) of the Securities Act of 1933 (the
         "Securities Act"), 15 U.S.C. § 77q(a) and Section 10(b) of the Securities
         Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule
         10b-5 thereunder, 17 C.F.R. § 240.10b-5;

   b.    Wextrust Securities violated, and is continuing to violate, Sections
         15(b)(1), 15(b)(7) and 15(c)(1) of the Exchange Act, 15 U.S.C. §§
         78o(b)(1)&(7) and 78o(c)(1), and Rules 10b-3, 15b1-1, 15b3-1 and 15b7-1
         promulgated thereunder, 17 C.F.R.§§ 240.10b-3, 240.15b1-1, 240.15b3-1

4

and 240.15b7-1;

c.    Shereshevsky violated, and is continuing to violate, Section 15(a) or alternatively, aided and abetted, and is continuing to aid and abet, Wextrust Securities' violations of Sections 15(b)(1), 15(b)(7) and 15(c)(1) of the Exchange Act, 15 U.S.C. §§78o(b)(1)&(7) and 78o(c)(1), and Rules 10b-3, 15b1-1, 15b3-1 and 15b7-1 promulgated thereunder, 17 C.F.R.§§ 240.10b-3, 240.15b1-1, 240.15b3-1 and 240.15b7-1; and

d.    Byers aided and abetted, and is continuing to aid and abet, Wextrust Securities' violations of Sections 15(b)(1), 15(b)(7) and 15(c)(1) of the Exchange Act, 15 U.S.C. §§78o(b)(1)&(7) and 78o(c)(1), and Rules 10b-3, 15b1-1, 15b3-1 and 15b7-1, 17 C.F.R.§§ 240.10b-3, 240.15b1-1, 240.15b3-1 and 240.15b7-1.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

7.    The Commission brings this action pursuant to the authority conferred upon it by Section 20(b) of the Securities Act, 15 U.S.C. § 77t(b), and Section 21(d)(1) of the Exchange Act, 15 U.S.C. § 78u(d)(1), seeking to restrain and enjoin permanently the Defendants from engaging in the acts, practices and courses of business alleged herein.

8.    In addition to the injunctive and emergency relief recited above, the Commission seeks: (i) final judgments ordering Defendants to disgorge their ill-gotten gains with prejudgment interest thereon; and (ii) final judgments ordering the Defendants to pay civil penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange

Act, 15 U.S.C. § 78u(d)(3).

## JURISDICTION AND VENUE

10.    This Court has jurisdiction over this action pursuant to Section 22(a) of the

Securities Act, 15 U.S.C. § 77v(a), and Sections 21(e) and 27 of the Exchange Act, 15 U.S.C.

§§ 78u(e) and 78aa.

11.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C.

§ 1391. The Defendants, directly and indirectly, have made use of the means and

instrumentalities of interstate commerce, or of the mails, in connection with the transactions,

acts, practices and courses of business alleged herein. A substantial part of the events

comprising Defendants' fraudulent scheme that gives rise to the Commission's claims occurred

in the Southern District of New York, including that Wextrust and Wextrust Securities maintain

offices in this District and certain of the Defendants misappropriated investor funds for personal

use from bank accounts serviced by banks in this district. Upon information and belief, the

Defendants have solicited approximately $17.8 million from 90 investors who either reside in the

Southern District of New York or who have chosen to have their distribution checks mailed to an

address within this district.

## THE DEFENDANTS

12.    **Steven Byers**, age 46, is a resident of Oakbrook, Illinois and owns sixty percent

of Wextrust. He is the Chairman of Wextrust and President and Chief Operating Officer of

WEP, the arm of Wextrust focusing on income-producing properties, and is also an owner or

controlling person of Wextrust Securities. Offering materials explain that in 1994 Byers founded

ASG Financial Services, Wextrust's predecessor, which underwrote debt and equity investments.

In 1996, Wexford Bancgroup was formed to focus on the commercial mortgage-backed

securities and specialty finance businesses. In 2003, Byers formed the current Wextrust.

Offering materials state that Byers has twenty years experience in the finance-related lending and

investment business and was a former bank examiner and valuation specialist with a supervisory

entity. Byers' sixty percent ownership of Wextrust is comprised of twenty percent outright

ownership and forty percent owned through interests in the Brandon Family Limited Partnership

and Lindsay Investment Limited Partnership. Together with Defendant Shereshevsky and

Partner A, Byers controls the Wextrust Entities. Although records from the broker-dealer,

Wextrust Securities, evidence that Byers is managing the broker-dealer and has solicited

investors in different offerings and effected securities transactions while associated with that

broker-dealer, records from the Financial Industry Regulatory Authority ("FINRA") show that

Byers has not passed any licensing exams.

13.    **Joseph Shereshevsky**, a/k/a Joseph Heller or "Yossi", age 52, is a resident of

Norfolk, Virginia and owns twenty percent of Wextrust through a partnership interest held in the

name of his wife. Shereshevsky was, until recently, Wextrust's Chief Operating Officer, and,

according to offering materials, has been a key person in building Wextrust's private equity

group, has greatly increased Wextrust's access to capital, was instrumental in founding Wextrust

Securities, and was responsible for Wextrust's expansion into diamond mining investments in

Africa. He has a background in the diamond commodity business and is well known in the

Orthodox Jewish community. In March 1993, Shereshevsky was arrested for bank fraud, among

other things. In June 2003, Shereshevsky pleaded guilty in the Southern District of New York to

one felony count of bank fraud. He was sentenced to time served, 24 months supervised release

7

and ordered to pay restitution in the amount of $38,797.90, which judgment was satisfied on

February 15, 2005. Although records from the broker-dealer, Wextrust Securities, evidence that

Shereshevsky is managing the broker-dealer and has solicited investors in different offerings and

effected securities transactions while associated with that broker-dealer, there are no records

from FINRA showing that Shereshevsky has passed any licensing exams. Shereshevsky was not

registered as a broker or dealer, nor was his association with Wextrust Securities disclosed.

14.    **WexTrust,** an Illinois limited liability company, was formed by Byers in 2003.

According to the company's website, Wextrust is a globally diversified private equity and

specialty finance company, specializing in investment opportunities ranging from real estate to

specialty finance and investment banking. Wextrust is headquartered in Chicago, Illinois and

maintains offices in New York, New York, Norfolk, Virginia, Atlanta, Georgia, Boca Raton,

Florida, Nashville, Tennessee, Tel Aviv, Israel and Johannesburg, South Africa. Wextrust

purports to have five main areas of business: (1) Wextrust Securities, a registered broker dealer

that acts as selling agent for Wextrust's offerings of units in various limited liability companies;

(2) WEP, which purportedly manages $500 million of real estate owned by various limited

liability companies whose units were sold to investors in offering; (3) Wextrust Commodities

Managers, LLC, which manages various managed futures funds with assets of approximately

$15 million; (4) certain high yield debt funds, which manage assets of approximately $35

million; and (5) certain interests in diamond mines and operations in Africa held through Pure

Africa Mining Ltd. and other affiliates, in which Wextrust has a substantial interest.

15.    **WEP** is an Illinois limited liability company headquartered in Chicago, Illinois,

engaged in the business of buying real estate assets, generally though its partially-owned

8

subsidiaries. According to WEP documents, WEP is the beneficial owner of approximately 120

entities formed for the purpose of owning equity interests in commercial and multi-family real

estate assets. Wextrust owns at least 80% of WEP and is its manager and majority member.

Between September 2006 and December 2007, WEP sold to investors approximately $8.6

million in promissory notes in WEP with varying maturities and terms, of which approximately

$6.2 million in principal remain outstanding. In December 2007, WEP commenced a new

offering of securities in the form of Guaranteed Subordinated Promissory Notes ("GSPNs") in

five varying maturities and terms with corresponding interest rates, each guaranteed by Wextrust.

To date, WEP has raised approximately $4.6 million from investors purchasing GSPNs.

16.     **WDG** is an Illinois limited liability company headquartered in Chicago, Illinois,

in the business of developing real estate assets. Wextrust owns 80% of WDG.

17.     **Wextrust Securities** is a broker-dealer registered with the Commission and a

Virginia limited liability company headquartered in Norfolk, Virginia. It employs thirty-six

registered representatives and maintains branch offices in New York, New York, Norfolk,

Virginia, Chicago, Illinois, Southfield, Michigan, and Ramat Gan, Israel. It was formed in

March 2005, registered with the Commission in March 2006, and has been a licensed broker

dealer since that time. Defendant Wextrust owns 21% of Wextrust Securities. Byers, through

the Byers Family Partnership, owns another 5% of Wextrust Securities. Shereshevsky, though

the Shereshevsky Family Partnership, owns another 7% of Wextrust Securities.

18.     **Axela** is an affiliate of WexTrust Capital. Axela, through its LLC subsidiaries,

owns and operates Wextrust's hotel properties, including the Axela Baltimore Hotel and the Park

View Hotel in Chicago, Illinois, and provides asset management services to other Wextrust

affiliated LLCs, such as Crowne-Phoenix Investors LLC.

**FACTS**

A.              **The Securities Offerings**

19.      The Individual Defendants, Byers and Shereshevsky, formed Wextrust in 2003

with Partner A with the business purpose to find investment opportunities, mainly in undervalued

real estate assets, and fund the acquisition of the assets through loans and the offering of private

placement securities.  Wextrust Securities was created in 2005 to act as the selling agent for the

private placement offerings.  Byers was Chairman of Wextrust and involved with real estate

investments.  Shereshevsky's role was to take the lead in soliciting investors through his wide-

contacts in the Orthodox Jewish community and to manage the offerings and investments

relating to the purchase of real estate and specific assets, including diamond mining interests in

Africa.

20.      The Individual Defendants and Defendant Wextrust Entities have conducted at

least 60 securities offerings and raised at least $255 million from at least 1,196 investors.  Most

of these offerings occurred between 2005 and 2008, although at least four offerings occurred as

early as 2002.  Many of the securities offerings involved the sale of "preferred membership

interests" in the LLC Entities, which were limited liability corporations created by Wextrust as

the investment vehicle for the specific offering.  These investments are securities in the form of

investment contracts, notes or other evidence of indebtedness.

21.      Upon information and belief, Wextrust, directly, or through WEP, WDG and

Axela, exercises sole ownership or control over the LLC Entities.  Wextrust Securities, the

10

registered broker-dealer, acts as a placement agent for most of the private placements. In many

of the securities offerings, the private placement memorandum represents that the proceeds

raised from the investors, together with a mortgage loan, will be used to purchase and operate a

specific commercial real estate property. The offering materials also generally represent that

investors will receive a fixed rate of return per annum, together with profits obtained from any

sale or operation of the property. In each offering, a Wextrust Entity, managed by Byers,

Shereshevsky and others, manages the limited liability investment. In many instances, the

offering documents provide that profits from the investments will be shared 30% by the

Defendants and 70% by the investors. In many instances, the offering documents promised

investors fixed interest payments, such as 8.5% percent over the course of the investment.

22.    In addition to conducting securities offerings of preferred interests in LLC

Entities that purchase real estate in the United States, the Defendants have conducted securities

offerings for entities that are investing in real estate abroad. Records obtained from Wextrust

Securities indicate that the Defendants have raised at least $47 million in at least six private

placements, which, according to the private placement memoranda, was to be used to purchase

directly or indirectly interests in certain diamond mines in South Africa and Namibia. The

Defendants have also conducted offerings on behalf of limited liability companies or other

entities that invest in non-real estate assets.

**B.    Fraudulent Misrepresentations In the Various Securities Offerings**

23.    The Defendants have knowingly or recklessly made false and material

misrepresentations to investors about the offerings and specifically about the uses for investor

money raised in the offerings. The Defendants have not disclosed that funds raised, purportedly

11

for specific investments, are actually being diverted to pay investors in prior offerings and to pay the operating expenses of the various Wextrust Entities. During the past year the inter-fund transfers have greatly escalated and the Wextrust Entities are running a substantial deficit on funds owed to various investors.

24.    Records from Defendant Wextrust Securities reveal that the Defendants have transferred more than $100 million between entities. A combined balance sheet circulated by email on May 3, 2008, from Wextrust's comptroller to Byers, shows "liabilities" of Wextrust as of year end 2007. The balance sheet lists 45 "loans", totaling more than $74 million that were made by LLC entities that had recently raised money in private placements to other LLC entities that were in need of cash. The same balance sheet includes "negative" liabilities that, on information and belief, reflect "receivables" owed to Wextrust Entities from various LLC Entities: i.e., loans that the Wextrust Entities made to those investment entities. These transfers of funds between the bank accounts of the various LLC Entities (which raised funds from investors) and the bank accounts of the Wextrust Entities are in violation of the offering documents provided to investors by the Defendants and contrary to representations in the offering memoranda that proceeds will be used only for specific purposes.

### 1.    The GSA Offering Fraud

25.    In 2005, the Defendants created GSA Investors, LLC to act as the issuer for a $9 million private placement. According to the offering memorandum, the proceeds raised were to be used to purchase and operate seven commercial properties leased to the U.S. General Services Administration.

12

26.     At the time the Defendants were soliciting investors for this private placement,

they knew, or were reckless in not knowing, that the proceeds raised would not be used to

acquire the properties.  Instead, the Defendants knew or recklessly disregarded that the proceeds

raised would be diverted to other purposes.  In fact, GSA Investors LLC did not acquire any real

property.

27.     GSA Managers, LLC is the manager of GSA Investors, LLC.  The GSA private

placement memorandum dated November 22, 2005 ("GSA PPM") represents that Defendant

Byers is the president and Defendant Shereshevsky is an executive officer of GSA Managers.

Defendants Byers and Shereshevsky, together with Wextrust, controlled the issuer, GSA

Investors LLC.

28.     GSA Investors, LLC issued the GSA PPM seeking to raise $9 million from

investors.  According to the GSA PPM, the purpose of the offering was to raise funds that,

together with a bank loan, would be used to "acquire, operate, sell, refinance, mortgage and

otherwise use and own for profit an undivided indirect interest in the Properties, consisting of

seven buildings all leased to the United States of America General Services Administration

located in Wisconsin, Illinois, Indiana and Florida."

29.     The GSA PPM represented that the purchase price for the seven properties will be

approximately $28.3 million, that GSA Investors, LLC intends to raise $9.2 million by selling

interests to "Preferred Members" and intends to assume a mortgage covering the properties in the

amount of approximately $21.6 million.  The GSA PPM also represented, in the "Use of

Proceeds" section, that the $9.2 million raised from investors will be used to pay a portion of the

13

purchase price of the properties, closing costs, commissions and other expenses associated with acquiring the properties and to establish a working capital reserve.

30.    The GSA PPM specifically identifies the mortgages that will be assumed in connection with the purchase, and further represents that "the Company is acquiring the Properties, in the Manager's view, at below replacement cost, thereby creating an immediate margin of safety for its investors."

31.    The GSA PPM also represents that the Manager (GSA Managers, LLC, which is managed by defendant WEP) "believes that the Properties, a government-tenant portfolio with seven office buildings in prime locations: (i) present a superior investment opportunity in terms of offering a stable, government backed return which limits investors' downside; (ii) are located in markets which present sound demand characteristics and property appreciation possibility; and (iii) will be efficiently managed."

32.    All of these representations were false.  Moreover, the Defendants knew or were reckless in not knowing they were false.  These misrepresentations were also material to investors.  In fact, the Defendants acquired no real property with the proceeds of the GSA offering.

33.    Based on these material misrepresentations and omissions and others, in 2005 and 2006, GSA Investors, LLC raised approximately $9 million from 103 investors.  In 2007, GSA raised an additional $457,000 through Wextrust Securities.  At the time the GSA PPM was used to solicit these investments, the Defendants knew that they had not purchased, and would not be purchasing, any property with the funds raised by GSA Investors, LLC.

14

34.     The Wextrust combined balance sheet shows that the Defendants diverted to the Wextrust Entity Defendants $6,554,400 from GSA Investors, LLC as of December 31, 2007.

35.     The GSA PPM touts Shereshevsky as "an executive officer of the Manager and is the Director of Operational Services of WexTrust Asset Management. Mr. Shereshevsky has been involved in real estate and multi-family management for the past 15 years and is a Principal of WexTrust Capital." The GSA PPM fails to disclose Shereshevsky's prior felony conviction. Defendants Byers and Shereshevsky knew or were reckless in not knowing of Shereshevsky's conviction.

36.     Wextrust Securities acted as the placement agent in the sale of GSA LLC securities and several registered representatives at Wextrust Securities received commissions in connection with those sales. Shereshevsky and his wife unlawfully received transaction based compensation in 2007 of approximately $9,890, which is approximately 2.2 percent of the $457,000 raised by Wextrust Securities for GSA.

37.     In a November 16, 2007 email from Partner A to Shereshevsky, Partner A acknowledged that the GSA offering, and other offerings by the Defendants, were frauds stating "You raised $9,000,000 from investors for GSA i.e. properties that never existed phony PPMs, etc. . . . Guys from enron got 20 years for doing that . . . You co-mingled (sic) funds over 100 times. Wiring high yield (another offering) funds for payroll, Africa, etc. is a crime."

### 2.     The Crowne-Phoenix Offering Fraud

38.     Crowne-Phoenix Investors LLC ("CP Investors") is a real estate LLC that the Defendants formed to acquire a "membership interest" in Crowne-Phoenix Holdings LLC ("CP

15

Holdings"). According to the Crowne-Phoenix Investors private placement memorandum dated August 8, 2007 ("Crowne-Phoenix PPM"), CP Holdings was formed to acquire a Crowne Plaza branded hotel in Phoenix, Arizona.

39.    Crowne-Phoenix Managers, LLC is the manager of CP Investors. The Crowne-Phoenix PPM represents that Defendant Byers is the President of Crowne-Phoenix Managers. Defendant WEP is the manager of Crowne-Phoenix Managers and Axela is the common member in Crowne-Phoenix Investors. Axela is also the property manager for the hotel.

40.    Defendants Byers and Shereshevsky, together with Defendants Wextrust and WEP, controlled the issuer, CP Investors.

41.    The Crowne-Phoenix PPM represented that the issuer was seeking to raise $9.3 million to be used to pay part of the purchase of a hotel in Phoenix, Arizona, improvements of the hotel property, acquisition and closing fees, interest reserve and equity costs. Specifically, the Crowne-Phoenix PPM represented that the $9.3 million raised from investors, together with the assumption of a primary mortgage of approximately $21 million, would be used to pay the $24 million purchase price for the hotel, as well as to fund $3.6 million in required property improvements, acquisition costs, fees and the creation of an equity reserve. Moreover, the Crowne-Phoenix LLC agreement, which was annexed to the PPM, specifically forbids any commingling of the funds raised in that offering.

42.    The Defendants knew, or were reckless in not knowing, that the representations in the Crowne-Phoenix PPM were false.

43.    Wextrust email reveal that the Defendants made improper transfers of funds almost immediately after the August 2007 offering had commenced: In an October 9, 2007

16

email, Shereshevsky instructed various Wextrust employees that all funds for the Crowne-Phoenix offering be deposited directly into Wextrust's house account at Wachovia bank in Virginia. As recorded in a November 20, 2007 email from Wextrust's accounting department, (1) in October and November 2007, Crowne-Phoenix "loaned" Wextrust $650,000 to fund payroll needs; (2) in October and November 2007, Crowne-Phoenix "loaned" Wextrust approximately $1 million "to fund partial distribution check funding;" and (3) in October 2007, Crowne-Phoenix "loaned" Wextrust $600,000 to fund or loan moneys to two other private placement entities, Guaranteed Depository Receipt Fund ("GDR") and Pure Africa Minerals LLC ("PAM").

44.    In early 2008, the Defendants used money from other offerings to pay back the Crowne-Phoenix bank account for all the outward transfers. In an email dated February 25, 2008, Byers told Shereshevsky that some of the money raised for a new offering, West 82nd Street LLC, was used to repay some of the deficit owed to CP Investors:

> We will be closing on W. 82nd [another LLC] very soon. We can use the money but obviously we used $1.1 million for the Gold Coast [another LLC] and *another $1.6 million for Crowne for which we raised but never paid back.*

45.    The private placement memoranda for the West 82nd Street offering did not disclose to investors that some of the money raised would be paid to other Wextrust affiliates.

46.    The Crowne-Phoenix PPM describes Defendant Shereshevsky as a "principal and integral part of Wextrust," and states that Shereshevsky was "instrumental in the founding of Wextrust Securities." The Crowne-Phoenix PPM fails to disclose Shereshevsky's prior felony conviction. Defendants Byers and Shereshevsky knew, or were reckless in not knowing, of

17

Shereshevsky's conviction.

47.    Defendant Wextrust Securities acted as placement agent for the Crowne-Phoenix offering. Defendant Shereshevsky and his wife received $130,953, or approximately one percent of the funds raised by Wextrust Securities in connection with the Crowne-Phoenix offering.

### 3.    The Block III Offering Fraud

48.    Block III Mines & Minerals, LLC ("Block III") is a Virginia limited liability company organized to make a loan to and acquire an interest in a Namibian company, Deva Investments (Pty), Ltd., which owns the exploration and mining rights in a group of diamond mines in Namibia known as Block III.

49.    Block III Managers, LLC, a Virginia limited liability company, is the manager of Block III. Block III Managers is wholly-owned by Brandon Investments, LLC. The Block III PPM represents that Defendants Byers and Shereshevsky are the co-managers of Brandon Investments, and that Brandon Investments is a wholly-owned subsidiary of Wextrust.

50.    Defendants Byers and Shereshevsky, together with Defendant Wextrust and Brandon Investments, controlled the issuer, Block III.

51.    Block III issued a private placement memorandum dated March 22, 2007 (the "Block III PPM") seeking to raise $11 million from investors. The Block III PPM represents that the proceeds of the offering will be used as follows: (a) $4.5 million would be used for new equipment and operating capital, (b) $1.5 million would be used to fund a reserve for a purchase option on two other mines, (c) $1.75 million would fund an operating reserve, $300,000 would pay legal and operating expenses, and (d) approximately $2.95 million would be paid in fees to

18

Wextrust and Wextrust Securities.  Moreover, the operating agreement attached to the Block III

PPM specifically limited the use of funds to expenses related to Block III.

52.    These representations were false.  Moreover, the Defendants knew, or were

reckless in not knowing, the representations were false.  Almost immediately after the money

was raised, Defendants diverted the proceeds to unauthorized uses.

53.    The Wextrust balance sheet shows that $3,990,910 of proceeds raised by Block III

Mines & Minerals LLC was diverted to Wextrust Entities.

54.    Defendant Wextrust Securities acted as a placement agent in the Block III

offering.

55.    The Block III PPM describes Shereshevsky as a "principal and integral part of

Wextrust," and states that Shereshevsky was "instrumental in the founding of Wextrust

Securities."  The Block III PPM fails to disclose Shereshevsky's prior felony conviction.

Defendants Byers and Shereshevsky knew, or were reckless in not knowing, of Shereshevsky's

conviction.

56.    Defendant Shereshevsky and his wife received transaction based compensation of

$249,577, or approximately two percent of the funds raised by Wextrust Securities, in connection

with the Block III offering.  The Shereshevskys also received $750,000 in bonuses in connection

with the Block III offering.

### 4.    The Peoria Offering Fraud

57.    Peoria Office Investors LLC is a real estate limited liability company formed by

the Defendants to own the sole membership interest in Peoria Office Holdings, LLC ("PO

Holdings").  PO Holdings was formed to acquire and operate an office building in Peoria,

Illinois.  Peoria Office Investors issued a PPM dated November 9, 2007 (the "Peoria Office PPM"), seeking to raise $4.7 million from 47 investors.

58.     The manager of Peoria Office Investors is Peoria Office Managers, LLC. Defendant Byers is the President of Peoria Office Managers.. WEP is the manager of Peoria Office Managers.

59.     Defendants Byers and Shereshevsky, together with Wextrust and WEP, controlled the issuer, Peoria Office Investors.

60.     The Peoria Office PPM represented to investors that the $4.7 million in proceeds expected to be raised, together with a mortgage of approximately $11 million, would be used to pay the $14.75 million purchase price, and the remaining money would pay closing costs, legal fees, acquisition fees and equity costs.  Moreover, the Peoria Office LLC agreement, which was annexed to the PPM, specifically forbids any commingling of the funds raised in that offering.

61.     These representations were false.  Moreover, Defendants knew, or were reckless in not knowing, that the representations were false.

62.     At the time the Peoria Investors PPM was issued, the Individual Defendants and Wextrust knew, or were reckless in not knowing, that proceeds raised would be diverted to other Wextrust Entities and for the Individual Defendants' own use.  In November 2007, Shereshevsky and Partner A, in an email that was copied to Byers, openly discussed that the Wextrust entities were operating at a loss of $1 million per month and that the diversion of funds would be necessary to pay payroll and other expenses of the various Wextrust Entities.

20

63.     The Wextrust balance sheet indicates that, as of December 31, 2007, Wextrust

had "borrowed" approximately $1,048,863.90 from the Peoria Office Investors LLC offering

proceeds.

64.     Defendant Wextrust Securities was the placement agent for the Peoria Office

offering.

65.     The Peoria Office Investors PPM describes Shereshevsky as a "principal and

integral part of Wextrust," and states that Shereshevsky was "instrumental in the founding of

Wextrust Securities." The Peoria Office Investors PPM fails to disclose Shereshevsky's prior

felony conviction. Defendants Byers and Shereshevsky knew, or were reckless in not knowing,

of Shereshevsky's conviction.

66.     In 2007, Defendant Shereshevsky and his wife received $59,462, or

approximately two percent of the funds raised by Wextrust Securities, in connection with the

Peoria Office Investors offering.

### 5.     Additional Fraudulent Offerings

67.     Other emails among the Individual Defendants retrieved from Defendant

Wextrust Securities show that numerous other offerings conducted by the Defendants are also

fraudulent. Several emails reveal that during the past year the Individual Defendants have

discussed the ever increasing deficit in funds owed to investors and the need to raise additional

funds to pay prior investors. The Individual Defendants have staked their ability to extricate

themselves from these frauds on the success of their diamond mining investments in Africa.

68.     For example, through an email dated November 15, 2007, Partner A confronted

Shereshevsky about wiring $225,000 from the Crowne-Phoenix account to an account for

21

Wextrust affiliates in South Africa, specifically, Pure Africa Minerals (Pty) Ltd., a South African

company formed to own mines in South Africa and Namibia. Partner A's concern was that

money was needed to pay down a loan from Broadway Bank in connection with the Crowne-

Phoenix investment for which Partner A and Byers had signed a personal guarantee.

Shereshevsky's response reveals the widespread and deliberate commingling, the inability of the

company to make payroll without loans, and that African investments was the "only hope" for

getting the Individual Defendants out of the "mess" they're in. Shereshevsky responded, in part,

to Partner A (emphasis added):

> U have no idea what u r talking about. *Wextrust borrowed about a month ago
> 750,000 from Skelton coast* [in Africa]. *Now we needed it so we took back
> 250,000. we [sic] are still owed 450,000 and I will continue to take it out until
> it is paid.*

Partner A forwarded this email to Byers, stating (emphasis added):

> *Why are we paying money to Africa before pay back Broadway Bank.* This is crazy.
> We both signed a personal guarantee here. Not comfortable with Joe having Carte
> Blance with the company's $$$$. If this continues, I will ask for a forensic audit.

Partner A then forwarded his email to Byers to Shereshevsky, who responded in part (emphasis
added):

> *As of today the company owes Africa about 575,000 that is outstanding.* The
> company owes me quite a bit of money including 200,000 that I lent them
> this morning so we can cover payroll including yours.

> \* \* \*

> The reason why it is more important to pay back Africa is because our only
> hope of getting out of our mess is Africa. Including you [Partner A]. We
> are in debt and I am working diligently to get us out of it. Go ahead and do
> a forensic audit. It will show that *we spend about 1,000,000 more a month*

22

*than we make,* for the last 3 years especially the last 19 months. Now that you know that we take in less than we get by 1,000,000 a month do you still want your payroll??????? If no, please let me relieve you of it so you can do the right thing.

[Partner A] . . . we are on the verge of becoming a very strong company. However even if we do it will be very hard going for the next 6 months to a year. *We may have to maneuver and do things that maybe we would not do if we were cash rich.* You want to bicker, go ahead and bicker. It won't do anything for us. You want to be a team man then show it.

69.    Emails retrieved from Wextrust Securities also reveal that investors are complaining that payments to them are being delayed or not paid, and they are concerned about their investments. To all the queries, a representative from Wextrust Securities has responded without disclosing that Wextrust was running a deficit and using funds from other entities to make payments to prior investors. In fact, behind the scenes, the Individual Defendants have engaged in frantic communications to drum up money to pay investors.

70.    On May 13, 2008, Investor A filed a complaint with the Illinois Office of the Attorney General, in which he states that he "smells a rat" and that "This is smelling like a giant PONZI scheme. My belie[f] is that Wextrust could be playing a huge, financial shell game. Their financial situation may be so bad that they're delaying distributions to earn the float, and paying our late distributions out of new investor dollars. I fear their house of cards is about to collapse, leaving investors holding the bag."

## C.    **Ongoing Fraudulent Offerings**

71.    The Defendants are currently in the midst of conducting at least four offerings in investments or instruments which are securities in the form of investment contracts, notes or other evidence of indebtedness: (i) Drake Oak Brook Investors, LLC; (ii) a note offering by

Defendant WEP (the "GSPN"); (iii) 625 Paragon Investors, LLC ("625 Paragon"); and (iv)ATM II.

72.     The Drake Oak Brook offering commenced on November 10, 2007 and seeks to raise $14.5 million purportedly to acquire indirectly and develop a Wyndham branded hotel. To date, the offering has raised approximately $11.6 million, with one investor investing $100,000 on July 21, 2008.

73.     The GSPN offering began in December 2007 and has to date raised approximately $4.6 million. The private placement memorandum represents that the proceeds will be used to fund short-term loans to entities affiliated with WEP, to fund security deposits, pay up-front fees and costs related to property acquisitions, provide bridge loans, and provide financing for tenant improvement costs and construction on currently owned real estate.

74.     The 625 Paragon offering commenced on or about April 17, 2008, seeking to raise $4.8 million from investors to acquire indirectly and develop a residential complex in Chicago, Illinois. The 625 Paragon private placement memorandum represents that the offering proceeds will be used to make a $3 million contribution to acquire an interest in Paragon/Division LLC and for placement fees and syndication costs, a development fee, and a "preferred return reserve." To date, the offering has raised approximately $1,015,000, with one investor investing $100,000 on July 2, 2008 and another investing $100,000 on July 10, 2008.

75.     ATM II commenced an offering on April 24, 2008 and seeks to raise $25 million from investors to acquire 10% of Wextrust's interest in a Wextrust affiliate, a South African entity called Pure Africa Minerals (Pty) Ltd. To date, ATM II has raised just over $1 million with one investor making a $250,000 investment on June 18, 2008.

24

76.    Upon information and belief, Defendants intend to use some or all of the proceeds raised by these four LLC Entities to meet obligations of other Wextrust Entities. The ATM II offering, in particular, is designed to fund deficits at other Wextrust Entities. Upon information and belief, the proceeds of the ATM II offering will go directly to Byers and Shereshevsky as opposed to buying a property. The Defendants intend to use funds raised to pay obligations owed to prior investors in other LLC Entities.

77.    A March 18, 2008 email from Shereshevsky to Byers shows that were both well aware of fraudulent activities they were engaged in (emphasis added):

> Please remember one thing. That although I always take care of you and myself, my goal in this thing as I have always told you from day one, is to get [W]extrust out of all the shit before the end of 09 or 10 at the latest. that is my primary concern. *We have faked it until we made it for long enough and now we must clean up*.

78.    As recently as July 2, 2008, Shereshevsky emailed Partner A stating, "We are in business. We are raising money. We received commitments today on atm, drake and paragon to the rune [sic] of over 2.5 million."

**D.    Fraudulent Over-Raising**

79.    The Defendants have also resorted to "over-raising" funds in a number of offerings in order to use excess proceeds to meet deficits in other entities. Wextrust Securities' records show that the actual amount raised in at least twenty-one offerings exceeds the amount that the Defendants represented they would raise in the various private placement memoranda by a total of more than $20 million. Upon information and belief, the Defendants never disclosed the over-raises to any investors.

80.    The purpose of the over-raising is made clear by the Defendants' e-mails. In an

25

April 11, 2008 email to Byers, Shereshevsky requests a short telephone conversation to discuss

certain agenda items, one of which is "Ideas for cash to survive until I finish this underwriting

[sic]." Later that same day, Shereshevsky sends a "follow up" email to Byers, stating, "We have

to do some old fashion over raising, raise for the GDR and High Yield (on shore) [another LLC

entity] to get through these months."

81.    Byer's view that over-raising translates into "profits" is set out in a previous email

to Shereshevsky on March 12, 2008, in which he states:

> Also, a big part of what we do is make money, profit, by raising more than the minimum that
> is required. Yes, it needs to be in reason but we have to have the ability to do this. We must
> determine with our accountants how we book and treat this and [the then-current CFO] can
> either get in line or get out of the way.

Not surprisingly, the CFO referred to in the email has since resigned.

**E.    Failure to File Proper Forms BD With**
**the Commission and Pass Licensing Exams**

82.    Wextrust Securities and the Individual Defendants have failed to make proper

filings with the Commission revealing that Shereshevsky is a control person of registered broker-

dealer, Wextrust Securities. In addition to Byers, among others, Wextrust Securities' Form BD

only discloses Shereshevsky's wife as being a control person associated with Wextrust

Securities' parent company, Wextrust.

83.    While acting as a broker, Defendant Shereshevsky has not registered with the

Commission as a broker. Alternatively, Wextrust Securities, Byers and Shereshevsky have

failed to properly license Shereshevsky as associated with Wextrust Securities.

84.    While Wextrust Securities Form BD filings with the Commission and FINRA,

which also regulates Wextrust Securities, makes no mention of Shereshevsky's involvement with

26

the broker-dealer, Shereshevsky is actively involved in management of the broker-dealer and in soliciting investments for the numerous private placement offerings.

85.    The emails retrieved from Wextrust Securities demonstrate that Shereshevsky is involved in the every day business of the broker-dealer, which consists almost exclusively of soliciting investors in the private placement offerings.

86.    Records of Defendant Wextrust Securities show that Shereshevsky is assigned credit for having solicited numerous investors. At least one private placement memorandum for Crowne-Phoenix, dated August 8, 2007, touts that "Mr. Shereshevsky was instrumental in the founding of Wextrust Securities, LLC, which is a licensed broker-dealer with registered representatives in the U.S. as well as parts of Europe and Israel."

87.    Defendants Byers and Shereshevsky admitted that Shereshevsky received commissions for soliciting investors in an email exchange between them on April 9-10, 2008. Defendants Byers and Shereshevsky knew it was wrong to conceal Shereshevsky's role in soliciting investors. Instead of disclosure, Byers suggested they "take all history into a positive" by calling Shereshevsky a "Risk Specialist" and compensating him for commissions in another way:

> My recommendation is that nothing should be on your card, just your name, and your position should be "Risk Specialist". Using that can take [sic] all history into a positive. Furthermore, you bring in potential investors and you tell them "what you told management" about the positive AND the RISKS and then turn them over to Mike or someone with a series 7. On compensation, we will have to rework. You will have to get paid salary plus bonus and then ownership distribution through the partnership interests. *Fees and % of fees for raising money will have to stop or we will be shut down. Take it out another way.*

88.    While Defendant Byers is listed as being associated with Wextrust Securities on

the BD Form filings, Byers has not taken and passed any required licensing exams required to manage a broker-dealer (the Series 24) or to solicit investments from investors (the Series 7). Shereshevsky also has not passed any licensing exams. Byers and Shereshevsky are both engaged in the operation and supervision of Wextrust Securities and in soliciting investors.

### FIRST CLAIM FOR RELIEF

**Violations of Section 17(a)(1) of the Securities Act**
(Against all Defendants)
(Antifraud violations)

89.     Paragraphs 1 through 88 are realleged and incorporated by reference as if set forth fully herein.

90.     From at least 2005 through the present, the Defendants, in the offer and sale of securities, by the use of the means and instruments of transportation and communication in interstate commerce or by the use of the mails, directly and indirectly, have employed and are employing devices, schemes and artifices to defraud.

91.     The Defendants knew or were reckless in not knowing of the activities described above.

92.     By reason of the activities herein described, the Defendants have violated and are violating Section 17(a)(1) of the Securities Act [15 U.S.C. §77q(a)(1)].

## SECOND CLAIM FOR RELIEF

### Violations of Section 17(a)(2) and 17(a)(3) of the Securities Act
(Against all Defendants)
(Antifraud violations)

93.    Paragraphs 1 through 88 are realleged and incorporated by reference as if set forth fully herein.

94.    From at least 2005, the Defendants, in the offer and sale of securities, by the use of the means and instruments of transportation and communication in interstate commerce or by the use of the mails, directly and indirectly, have obtained and are obtaining money and property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and have engaged and are engaging in transactions, practices or courses of business which have operated and will operate as a fraud and deceit upon investors.

95.    By reason of the activities herein described, the Defendants have violated and are violating Sections 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §77q(a)(2) and §77q(a)(3)].

## THIRD CLAIM FOR RELIEF

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5
(Against all Defendants)
(Antifraud violations)

96.    Paragraphs 1 through 88 are realleged and incorporated by reference as if set forth fully herein.

97.    From at least 2005 through the present, the Defendants, in connection with the purchase and sale of securities, directly and indirectly, by the use of the means and

29

instrumentalities of interstate commerce or of the mails, have employed and are employing

devices, schemes and artifices to defraud; have made and are making untrue statements of

material fact and have and are omitting to state material facts necessary in order to make the

statements made, in light of the circumstances under which they were made, not misleading; and

have engaged and are engaging in acts, practices and courses of business which operated as a

fraud and deceit upon investors.

98.     Defendants knew or were reckless in not knowing of the activities described

above.

99.     By reason of the activities herein described, the Defendants have violated and are

violating Section 10(b) of the Exchange Act [15 U.S.C. §§78j(b)] and Rule 10b-5 [17 C.F.R.

§240.10b-5] promulgated thereunder.

## FOURTH CLAIM FOR RELIEF

### Violations, and Aiding and Abetting Violations, of
### Section 15(c)(1) Of The Exchange Act, 15 U.S.C. §78o(c)(1), And
### Rule 10b-3, 17 C.F.R. §240.10b-3
(Against Wextrust Securities, Byers and Shereshevsky)
(Violations of Antifraud Provisions by Brokers)

100.    Paragraphs 1 through 88 are realleged and incorporated by reference as if set forth

fully herein.

101.    Wextrust Securities engaged and is engaging in the business of effecting

transactions in securities for the accounts of others, and therefore was and is a broker within the

meaning of Section 3(a)(4) of the Exchange Act, 15 U.S.C. §78c(a)(4).

102.    Wextrust Securities, while a broker, directly or indirectly, by use of the mails or

the means or instrumentalities of interstate commerce, has effected and is effecting transactions

in, and has induced and attempted to induce and are attempting to induce the purchase or sale of,

securities by means of manipulative, deceptive, or other fraudulent devices or contrivances,

including: (a) acts, practices, and courses of business that operated or would have operated as a

fraud or deceit upon any person, including persons to whom Wextrust Securities offered and/or

sold securities; and (b) making untrue statements of material fact and omissions to state a

material fact necessary, in order to make the statements made, in light of the circumstances under

which they were made, not misleading with knowledge or reasonable grounds to believe that

such statements are untrue or misleading.

103.    As part of and in furtherance of this violative conduct, Wextrust Securities offered

and/or sold securities by making the material misrepresentations and omissions set forth herein.

104.    Wextrust Securities knew, was reckless in not knowing, or had reasonable

grounds to believe that said representations or omissions were false or misleading.

105.    By reason of the foregoing, Wextrust Securities violated, and, unless restrained

and enjoined, will again violate Section 15(c)(1) of the Exchange Act, 15 U.S.C. §78o(c)(1), and

Rule 10b-3, 17 C.F.R. §240.10b-3.

106.    By reason of the foregoing, Byers aided and abetted, and, unless restrained and

enjoined, will again aid and abet, Wextrust Securities' violations of Section 15(c)(1) of the

Exchange Act, 15 U.S.C. §78o(c)(1), and Rule 10b-3, 17 C.F.R. §240.10b-3.

107.    To the extent Shereshevsky was associated with Wextrust Securities, and not

acting as a broker unassociated with a registered broker-dealer, Shereshevsky aided and abetted,

and, unless restrained and enjoined, will again aid and abet, Wextrust Securities' violations of

Section 15(c)(1) of the Exchange Act, 15 U.S.C. §78o(c)(1), and Rule 10b-3, 17 C.F.R.

31

§240.10b-3.

## FIFTH CLAIM FOR RELIEF

Violations of Section 15(a) of the Exchange Act, 15 U.S.C. §78o(a)
(Against Shereshevsky)
(Violations of Registration Provisions By Brokers)

108.    Paragraphs 1 through 88 are realleged and incorporated by reference as if set forth

fully herein.

109.    Shereshevsky, when he was neither registered with the Commission as a broker

nor a properly licensed associated person of a registered broker-dealer, made use of the mails or

means and instrumentalities of interstate commerce to effect transactions in, or to induce or

attempt to induce the purchase or sale of securities.

110.    During the time of the transactions and events alleged in this Complaint,

Shereshevsky was neither registered with the Commission as a broker nor properly licensed to

sell securities as an associated person of any registered broker-dealer.

111.    By reason of the foregoing, Shereshevsky violated and, unless restrained and

enjoined, will again violate Section 15(a)(1) of the Exchange Act, 15 U.S.C. §78o(a)(1).

## SIXTH CLAIM FOR RELIEF

Violations, and Aiding and Abetting Violations, of Section 15(b) of the Exchange Act
and Rule 15b7-1 thereunder, 15 U.S.C. § 78o(b) and 17 C.F.R. § 240.15b7-1
(Against Wextrust Securities, Byers and Shereshevsky)
(Against Use of Unregistered Salespersons)

112.    Paragraphs 1 through 88 are realleged and incorporated by reference as if set forth

fully herein.

113.    As set forth above, Wextrust Securities permitted unregistered employees to buy

32

and sell securities.

114.    As a result of the conduct set forth above, Wextrust Securities willfully violated

Section 15(b) of the Exchange Act and Rule 15b7-1 promulgated thereunder, 15 U.S.C. § 78o(b)

and 17 C.F.R. § 240.15b7-1.

115.    Defendants Byers aided and abetted Wextrust Securities' violations of Section

15(b) of the Exchange Act and Rule 15b7-1 promulgated thereunder, 15 U.S.C. § 78o(b) and 17

C.F.R. § 240.15b7-1.

116.    To the extent Shereshevsky is associated with Wextrust Securities, and not acting

as a broker that is not associated with a registered broker-dealer, Shereshevsky aided and abetted

Wextrust Securities' violations of Section 15(b) of the Exchange Act and Rule 15b7-1

promulgated thereunder, 15 U.S.C. § 78o(b) and 17 C.F.R. § 240.15b7-1.

## SEVENTH CLAIM FOR RELIEF

**Violations, and Aiding and Abetting Violations, of Section 15(b) of the Exchange Act and Rules 15b1-1 and 15b3-1 thereunder, 15 U.S.C. § 78o(b) and 17 C.F.R. §§ 240.15b1-1, 240.15b3-1**
(Against Wextrust Securities, Byers and Shereshevsky)
(Undisclosed Control Persons)

117.    Paragraphs 1 through 88 are realleged and incorporated by reference as if set forth

fully herein.

118.    As set forth above, Wextrust Securities failed to disclose to the SEC, as required,

that Shereshevsky exercised control, directly or indirectly, over Wextrust Securities'

management and policies, through agreement or otherwise, and that Shereshevsky had a prior

felony conviction for bank fraud.

119.    As a result, Wextrust Securities violated, and Byers and Shereshevsky aided and

33

abetted the violations by Wextrust Securities, of Section 15(b) of the Exchange Act, 15 U.S.C. §

78o(b), and Rules 15b1-1 and 15b3-1 promulgated thereunder, and 17 C.F.R. §§ 240.15b1-1,

240.15b3-1.

## PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully requests that the Court grant the following relief:

### I.

Enter judgment in favor of the Commission finding that the Defendants each violated the

securities laws and rules promulgated thereunder as alleged herein;

### II.

An order permanently enjoining the Defendants, their agents, servants, employees and

attorneys and all persons in active concert or participation with them who receive actual notice of

the injunction by personal service or otherwise, and each of them, from committing future

violations of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), Section 10(b) of the

Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5, 17 C.F.R. § 240.10b-5.

### III.

An order permanently enjoining Wextrust Securities, its agents, servants, employees and

attorneys and all persons in active concert or participation with them who receive actual notice of

the injunction by personal service or otherwise, and each of them, from committing future

violations of Sections 15(b) and 15(c)(1) of the Exchange Act, 15 U.S.C. §§ 78o(b) and

34

78o(c)(1), and Rules 10b-3, 15b1-1, 15b3-1 and 15b7-1 promulgated thereunder, 17 C.F.R.§§ 240.10b-3, 240.15b1-1, 240.15b3-1 and 240.15b7-1.

## IV.

An order permanently enjoining Shereshevsky, his agents, servants, employees and attorneys and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from committing future violations of Section 15(a)(1) of the Exchange Act, 15 U.S.C. § 78o(a)(1), or alternatively, from aiding and abetting future violations of Sections 15(b)(1), 15(b)(7) and 15(c)(1) of the Exchange Act, 15 U.S.C. §§78o(b)(1)&(7) and 78o(c)(1), and Rules 10b-3, 15b1-1, 15b3-1 and 15b7-1 promulgated thereunder, 17 C.F.R.§§ 240.10b-3, 240.15b1-1, 240.15b3-1 and 240.15b7-1.

## V.

An order permanently enjoining Byers, his agents, servants, employees and attorneys and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from aiding and abetting future violations of Sections 15(b) and 15(c)(1) of the Exchange Act, 15 U.S.C. §§ 78o(b) and 78o(c)(1), and Rules 10b-3, 15b1-1, 15b3-1 and 15b7-1 promulgated thereunder, 17 C.F.R.§§ 240.10b-3, 240.15b1-1, 240.15b3-1 and 240.15b7-1.

## VI.

An order directing the Defendants to disgorge their ill-gotten gains, plus prejudgment interest thereon.

35

## VII.

A order directing the Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d) and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).

## VIII.

Granting such other and further relief as to this Court seems just and proper.

Dated:   New York, New York
         August 11, 2008

By: _____
Andrew M. Calamari (AC-4864)
Associate Regional Director
Attorney for Plaintiff
SECURITIES AND EXCHANGE
COMMISSION
3 World Financial Center
New York, NY 10281-1022
(212) 336-0178

Of Counsel:

Alexander M. Vasilescu
Doria G. Bachenheimer
Steven Rawlings
Danielle Sallah

Cʜ

08CV4887
JUDGE DOW
MAGISTRATE JUDGE BROWN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE COMMISSION,

                                    Plaintiff,

        -against-

STEVEN BYERS, JOSEPH SHERESHEVSKY,
WEXTRUST CAPITAL, LLC, WEXTRUST
EQUITY PARTNERS, LLC, WEXTRUST
DEVELOPMENT GROUP, LLC, WEXTRUST
SECURITIES, LLC, and AXELA HOSPITALITY,
LLC,

                                    Defendants.



USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8|11|08

No. 08 Civ. 7104 (SWK)

# FILED

AUG 2 6 2008    NH
Aug 26 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## ORDER FREEZING ASSETS

On the Application of Plaintiff Securities and Exchange Commission for an Order freezing the Defendants' assets pending adjudication of the Commission's request for a preliminary injunction, the Court has considered (1) the Complaint filed by the Commission on August 11, 2008; (2) the Declaration of Tamara R. Heller, executed on August 10, 2008, and the exhibits thereto, including the declarations of William Schorsch, Nanette L. Wauchop and Patricia K. Singleton; (3) the Declaration of Steven G. Rawlings pursuant to Local Rule 6.1, executed on August 11, 2008, and the exhibits thereto; (5) the memorandum of law in support of Plaintiff Commission's application, dated August 10, 2008.

Based on the foregoing documents, the Court finds that a proper showing, as required by Section 20(b) of the Securities Act, and Section 21(d) of the Exchange Act, has been made for the relief granted herein because it appears that the Defendants may attempt to dissipate, deplete, or transfer from the jurisdiction of this Court, funds, property and other assets that could be subject to an order of disgorgement or an order imposing civil penalties. Further, it appears that

an order freezing the Defendants' assets, as specified herein, is necessary to preserve the *status quo*, to protect investors and clients of the Defendants from further transfers of funds and misappropriation, to protect this Court's ability to award equitable relief in the form of disgorgement of illegal profits from fraud and civil penalties, and to preserve the Court's ability to approve a fair distribution for victims of the fraud.

Good and sufficient reasons have been shown why procedure other than by notice of motion is necessary.

This Court has jurisdiction over the subject matter of this action and over the Defendants, and venue properly lies in this District.

**NOW, THEREFORE,**

IT IS HEREBY ORDERED that, pending a hearing and determination of the Commission's Application for a Preliminary Injunction, the Defendants, and each of their financial and brokerage institutions, officers, agents, servants, employees, attorneys-in-fact, and those persons in active concert or participation with them and all other persons or entities who receive actual notice of such Order by personal service, facsimile service or otherwise, and each of them, hold and retain within their control, and otherwise prevent, any withdrawal, transfer, pledge, encumbrance, assignment, dissipation, concealment or other disposal of any assets, funds, or other property (including money, real or personal property, securities, commodities, choses in action or other property of any kind whatsoever) of, held by, or under the direct or indirect control of the Defendants, including, but not limited to, entities owned or controlled by, related to, or associated or affiliated with the Defendant Wextrust Entities and the limited liability companies they control or have an ownership interest in, including but not limited to, those entities listed in Exhibit A, whether held in any of their names or for any of their direct or

indirect beneficial interest wherever situated, in whatever form such assets may presently exist and wherever located within the territorial jurisdiction of the United States courts, and directing each of the financial or brokerage institutions, debtors and bailees, or any other person or entity holding such assets, funds or other property of the Defendants to hold or retain within its or his control and prohibit the withdrawal, removal, transfer or other disposal of any such assets, funds or other properties including, but not limited to, all assets, funds, or other properties held in the accounts listed in Exhibit B, as well as each real estate parcel owned directly or indirectly by the Defendant Wextrust Entities and the limited liability companies they control of have an ownership interest in, including but not limited to, those entities listed on Exhibit A.

IT IS FURTHER ORDERED that a copy of this Order and the papers supporting the Commission's Application be served upon the Defendants on or before August 12, 2008, by personal delivery, facsimile, overnight courier, or first-class mail.

IT IS FURTHER ORDERED that this Order shall be, and is, binding upon the Defendants and each of their respective officers, agents, servants, employees, attorneys-in-fact, subsidiaries, affiliates and those persons in active concert or participation with them who receive actual notice of this Order by personal service, facsimile service, or otherwise.

SO ORDERED.

Dated:     1:15 pm
           August 11, 2008
           New York, New York

RICHARD J. SULLIVAN (PART I)
UNITED STATES DISTRICT JUDGE

3